UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MENES ALEXANDER WEIGHTMAN,

    Plaintiff,

v.                                                 Case No. 22-cv-1447-bhl

DR. OBRIEN,
LAURA SUKOWATY,
DIANA L. SIMMONS,
CHARLES DOMBECK,
GEORGE D. MORRISON,
REONO BERTAGNOLLI,
GWENDOLYN A. VICK,
ANN YORK,
ALLISSA HAAS,
HALEY R. BASSUENER,
ASHLEY M. HASELEU,
DR. CHERYL A. JEANPIERRE,
ALLISON K. HOHENSTERN, and
ROBERT WEINMAN,

    Defendants.

## SCREENING ORDER

Plaintiff Menes Alexander Weightman, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Weightman's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Weightman has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Weightman has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his

complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $4.54. Weightman's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

2

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Weightman asserts that, on July 13, 2022, he broke/fractured his foot while playing basketball. He explains that officers waited about three hours until recreation time ended before calling the nurses station, telling him, if he can walk, then it is not broken. Once notified, medical staff instructed Weightman to submit a health services request, which he did. Weightman asserts that he was told to return to his cell, which is on the third floor. He states that he was in extreme pain as he limped up three flights of stairs. According to Weightman, later that night, he called out to Nurse Ashley Haseleu, who was handing out medication, that he was in pain and needed to be seen, but she ignored him.

Weightman asserts that he was seen the next day by Nurse Allissa Hohenstern. He states that he told her he heard a bone pop, but she was distracted and did not appear to be listening to him. According to Weightman, she told him it was just a sprain and told him to put ice on it and keep it elevated. She also gave him an ace bandage wrap after he begged for one. Weightman explains that he then had to walk back to his cell. He states that this is the only time he was physically examined by anyone in the health services unit.

According to Weightman, he returned to the health services unit four days later for an x-ray. The next day, he again returned to the health services unit and was told by the physical therapist that his foot was broken. The physical therapist instructed Weightman to select a walking boot for his left foot. Weightman asserts that the boot was filthy, so he asked for cleaning supplies, which the physical therapist gave to him. The physical therapist also gave him crutches and then sent him back to his cell.

3

Weightman asserts that he filed multiple complaints about his foot. Eventually, he was moved to the ground floor and given a bottom bunk. He states that Dr. Cheryl Jeanpierre also ordered him a wheelchair and an extra pillow, but she never physically examined him. According to Weightman, he had a telemed visit with an offsite orthopedic surgeon, who informed him he may need surgery. In mid-September, Weightman had a second x-ray and a follow-up telemed visit with the orthopedic surgeon. According to Weightman, the surgeon said his foot was not healing properly, so he needed surgery and a bone stimulator. Shortly after the second x-ray, APNP Diana Simons called Weightman into her office and informed him that Dr. Reono Bertagnolli, a radiologist, disagreed with the orthopedic surgeon's assessment. A little less than a month later, on October 12, 2022, Weightman received a letter stating that a request for surgical approval was submitted. It is not clear if that request was approved or denied, but as of the date Weightman filed his complaint, he had not received surgery or been provided with a bone stimulator. Weightman asserts that he continues to use a walking boot and is in pain. He states that he received ibuprofen for only thirty days.

### THE COURT'S ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)). With regard to the second consideration, a defendant is liable for damages under §1983 only if he or she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's

4

direction or with his or her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019).

Weightman successfully alleges that he suffers from an objectively serious medical condition—a broken foot that continues to cause significant pain and discomfort. However, for the reasons discussed below, the Court cannot reasonably infer that any of the fourteen Defendants he names in the caption of his complaint were deliberately indifferent to that condition.

As to Nurse Haseleu, who allegedly ignored Weightman's attempts to get her attention while she handed out medication, the Seventh Circuit has explained that "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Weightman was not in need of emergency care when he called out to Nurse Haseleu, so she was not required to abandon her medication pass duties to address Weightman's complaints. If the Constitution required nurses to interrupt medication pass to respond to every inmate's call for assistance, it is unlikely that medication pass would ever be completed in a timely, efficient manner.

Next, Weightman asserts that Nurse Hohenstern was distracted as he described his condition to her, but he also asserts that she instructed him to ice and elevate his injured foot and provided him with an ace bandage after he asked for one. It also appears that Nurse Hohenstern provided Weightman with ibuprofen (he states that he received ibuprofen for thirty days, but he does not clarify who ordered it) and referred him for an x-ray, which he received a few days later. Although Nurse Hohenstern's conclusion that Weightman had suffered only a sprain proved to be incorrect, her efforts to address his pain and mobility limitations and her decision to order diagnostic testing does not

5

reasonably support an inference that she was deliberately indifferent to his injury. *See Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) ("[A] defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.").

Weightman also does not state a claim against the physical therapist, who provided Weightman with a walking boot and crutches. Although the walking boot was dirty, Weightman acknowledges that he was provided with cleaning supplies upon request. Nor do Weightman's allegations that Dr. Jeanpierre ordered him a wheelchair and a lower tier/lower bunk restriction and referred him to an outside specialist reasonably support an inference that she was deliberately indifferent to his injury. Weightman emphasizes throughout his complaint that none of the institution doctors physically examined his foot, but he does not explain what difference a physical examination would have made. The doctors had access to his x-rays and he was provided with extensive support, including ice, ibuprofen, a walking boot, crutches, a wheelchair, a referral to an outside specialist, multiple x-rays, and lower-bunk and lower-tier restrictions. Weightman includes no explanation of what additional purpose a physical examination would have served.

Weightman also fails to state a claim against Dr. Bertagnolli, who allegedly disagreed with the orthopedic surgeon's assessment of the injury. It appears that Dr. Bertagnolli provided his opinion on how Weightman's injury was healing after comparing Weightman's first and second x-rays. But a disagreement between medical professionals is insufficient, by itself, to establish an Eighth Amendment violation. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). And, in any event, it does not appear that Dr. Bertagnolli's assessment had any impact on Weightman's treatment plan, as Weightman alleges that a request for surgical approval was submitted less than a month after Dr. Bertagnolli's report. Weightman also fails to state a claim based on allegations that APNP Simmons informed him of the differing assessments of Dr. Bertagnolli and the orthopedic surgeon. Her

6

attempts to keep Weightman informed of developments were a good thing and to Weightman's benefit; they do not demonstrate deliberate indifference to his condition.

Weightman also fails to state a claim against the other individuals named in the complaint: Dr. Obrien, Laura Sukowaty, Charles Dombeck, George Morrison, Gwendolyn Vick, Ann York, Allissa Haas, Haley Bassuener, and Robert Weinman. Although he names these individuals in the caption of his complaint, he includes no allegations explaining what they did or did not do to violate his rights. He merely states that "[a]ll Waupun Heath Service staff, doctors, nurses and HSU mgrs. has been involved, with the rote disregard for my medical issues." Dkt. No. 1 at 7. But, as the Supreme Court has explained, while "[t]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because §1983 requires that a defendant be personally involved in an alleged deprivation to be liable, *see Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), a complaint must include allegations that connect the person he is suing to the alleged misconduct.

Finally, Weightman asserts that he has not received any pain medication other than ibuprofen, which he received for only thirty days. Weightman explains that he continues to be in significant pain and that he has submitted multiple health service requests, but he does not assert who received his requests and/or who refused to provide him with pain medication. Because Weightman does not identify who is responsible for failing to address his complaints of pain, he fails to state a claim. Weightman also appears to take issue with the delay in scheduling surgery. He asserts that a request that the surgery be approved was submitted, but he does not clarify whether the request was approved, and, if not, who denied the request. "A delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). But to state a claim on this basis, Weightman must identify the person

responsible for the delay. The Court reminds Weightman that, even outside of prison, it is common for elective surgeries to be scheduled months out. Security concerns and staffing issues may further delay the scheduling of a surgery. These types of delays are not the result of medical staff's deliberate indifference to a prisoner's condition.

The Court will give Weightman an opportunity to file an amended complaint that cures the deficiencies identified in this decision. Weightman should explain: (1) what happened to make him believe he has a legal claim; (2) when it happened; (3) who did it; (4) why; and (5) how the Court can assist him in relation to those events. He should set forth his allegations in short and plain statements and should ensure that his amended complaint can be understood by someone who is not familiar with the facts of his case.

Weightman is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this case based on Weightman's failure to state a claim in his original complaint.

**IT IS THEREFORE ORDERED** that Weightman's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that on or before **February 10, 2023**, Weightman may file an amended complaint curing the defects in the original complaint as described in this decision. If Weightman does not file an amended complaint or an explanation of why he is unable to do so by the

deadline, the Court will dismiss this action based on his failure to state a claim in the original complaint.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Weightman a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Weightman shall collect from his institution trust account the $345.46 balance of the filing fee by collecting monthly payments from Weightman's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Weightman is transferred to another institution, the transferring institution shall forward a copy of this Order along with Weightman's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Weightman is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse

517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Weightman is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on January 10, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge