UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MENES ALEXANDER WEIGHTMAN,

        Plaintiff,

        v.                                                 Case No. 22-cv-1447-bhl

DR. OBRIEN,
LAURA SUKOWATY,
DIANA L. SIMMONS,
CHARLES DOMBECK,
GEORGE D. MORRISON,
REONO BERTAGNOLLI,
GWENDOLYN A. VICK,
ANN YORK,
ALLISSA HAAS,
HALEY R. BASSUENER,
ASHLEY M. HASELEU,
DR. CHERYL A. JEANPIERRE,
ALLISON K. HOHENSTERN, and
ROBERT WEINMAN,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Menes Alexander Weightman, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On January 10, 2023, the Court screened the complaint and allowed Weightman an opportunity to file an amended complaint, which he did on February 8, 2023. The Court will screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

As explained in the order screening the original complaint, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any

claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Weightman asserts that, on July 13, 2022, he broke/fractured his foot while playing basketball. He explains that officers waited about three hours until recreation time ended before calling the nurses station, instead telling him that if he could walk, then it was not broken. Once notified, medical staff instructed Weightman to submit a health services request, which he did. Weightman asserts that he was told to return to his cell, which is on the third floor. He states that he was in extreme pain as he limped up three flights of stairs. According to Weightman, later that night, he called out to Nurse Ashley Haseleu, who was walking down the hall and told her he was in pain and needed to be seen, but she ignored him. Dkt. No. 8 at 3-4.

Weightman asserts that he was seen the next day by Nurse Allissa Hohenstern, who told him it was a sprain and sent him back to his cell. Weightman states that he later submitted another health services request, and, four days later, on July 19, 2022, was called to the health services unit for an x-ray. The next day, he again returned to the health services unit and was told by the physical therapist that his foot was broken. By July 20, 2022, he had been ordered pain medication, an ace wrap, a boot, crutches, and a wheelchair. Dkt. No. 8 at 4-6, 13.

Weightman asserts that he filed multiple complaints about his foot. Eventually, he was moved to the ground floor and given a bottom bunk. He states that Dr. Cheryl Jeanpierre also ordered him a

2

wheelchair and an extra pillow, but she never physically examined him. According to Weightman, on July 23, 2022, he had a telemed visit with an offsite orthopedic surgeon, who informed him he may need surgery. Dkt. No. 8 at 6-7.

In mid-September, Weightman had a second x-ray and a follow-up telemed visit with the orthopedic surgeon. According to Weightman, the surgeon said his foot was not healing properly, so he needed surgery and a bone stimulator. Weightman asserts that Dr. O'Brien, the onsite orthopedic doctor has refused to see him despite his many health services requests indicating that he is in extreme pain, his foot is deformed, and he cannot walk properly. According to Weightman, Diana Simmons told him that he had been scheduled to see Dr. O'Brien but there is a delay because she is at the institution only two days per week. Dkt. No. 8 at 8.

Also in mid-September, Weightman learned that Dr. Reono Bertagnolli disagreed with the orthopedic surgeon's assessment that the foot fracture was not healing properly. On October 31, 2022, Dr. George Morrison stated that he observed a deformity "present at the proximal aspect of the 5th metatarsal." Weightman asserts that when he saw Simmons, she told him that she was supposed to mark his foot for a bone stimulator months earlier, but, according to Weightman, the stimulator was never used because no one in health services knew how to use it. Simmons also informed Weightman that a request for surgery had been submitted and that the delay was because Dr. Cheryl Jeanpierre had quit and his file had become lost in the shuffle. Dkt. No. 8 at 8, 16.

On November 1, 2022, Weightman received a letter from the Class III Committee, whose members included Charles Dombeck, Simmons, Dr. O'Brien, Laura Sukowaty, and Robert Weinman, stating that the request for surgery had been denied because x-rays showed continued healing. Weightman asserts that he continues to be in pain and walks with a limp. Dkt. No. 8 at 16.

3

## The Court's Analysis

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)). With regard to the second consideration, a defendant is liable for damages under §1983 only if he or she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's direction or with his or her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019).

Weightman may proceed on a claim that Dr. O'Brien, the onsite orthopedist, was deliberately indifferent to his condition based on her refusal to see him despite his multiple health services requests informing her that his foot was deformed and he was in significant pain. He also may proceed on a deliberate indifference claim against Simmons, who allegedly delayed marking his foot for a bone stimulator, did not later use the stimulator because she did not know how, and failed to provide him with adequate pain medication. He may also proceed on a deliberate indifference claim against Dr. Jeanpierre based on allegations that she never evaluated him in person and ignored his many requests for pain medication after the initial prescription for ibuprofen stopped working. Finally, he may proceed on a deliberate indifference claim against Charles Dombeck, Simmons, Dr. O'Brien, Laura Sukowaty, and Robert Weinman, based on allegations that they denied the request for surgery despite two specialists stating he needed surgery and despite him not being able to walk properly because of

4

the pain. Weightman may also proceed on state law negligence and medical malpractice claims against these Defendants.

Weightman does not, however, state a claim against the remaining Defendants. As to Nurse Haseleu, who allegedly ignored Weightman's attempts to get her attention while she walked down the hall, the Seventh Circuit has explained that "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Weightman was not in need of emergency care when he called out to Nurse Haseleu, so she was not required to abandon her duties to address Weightman's complaints. If the Constitution required nurses to interrupt whatever they were doing to respond to every inmate's call for assistance, it is unlikely that their duties would ever be completed in a timely, efficient manner. It is not clear from Weightman's amended complaint who is responsible for the initial delay he experienced on the day he injured his foot, but it was not Haseleu's responsibility.

Nor does Weightman state a claim against Nurse Hohenstern or the physical therapist whom he saw within days of his injury. Weightman initially minimizes their response to his condition, but later in his complaint he quotes from a health services request that he submitted shortly after seeing them, in which he acknowledges that he had been ordered pain medication, an ace wrap, a boot, crutches, and a wheelchair. These efforts to address Weightman's pain and mobility limitations and to diagnose the extent of his injury do not reasonably support an inference that they were deliberately indifferent to his injury. *See Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

5

Weightman also fails to state a claim against Dr. Bertagnolli, who allegedly disagreed with the orthopedic surgeon's assessment of the injury. It appears that Dr. Bertagnolli provided his opinion on how Weightman's injury was healing after comparing Weightman's first and second x-rays. But a disagreement between medical professionals is insufficient, by itself, to establish an Eighth Amendment violation. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). And it does not appear that Dr. Bertagnolli was a part of the Class III Committee that decided to deny the request for surgery on Weighman's foot. He cannot be liable for a decision that he did not make.

Finally, Weightman fails to state claims against the remaining doctors and nurses who did not provide him with direct care but only provided him with updates in response to his health service requests and/or provided his treating providers with medical opinions so the providers could decide how to proceed. Weightman concedes that he had no interactions with these nurses and doctors but is suing them only because he found their names in his medical records. Dr. Morrison allegedly observed a deformity in Weightman's foot, which is consistent with the orthopedic surgeon's opinion. This observation standing alone is not sufficient to suggest that he was deliberately indifferent to Weightman's condition. Similarly, Gwendolyn Vick, Ann York, Allissa Haas, and Haley Bassuener responded to Weightman's health services requests by confirming that appointments had been scheduled or alerting him to how particular requests had been resolved. They served an administrative function and are not vicariously liable for the actions or inactions of those who were responsible for Weightman's care. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

**IT IS THEREFORE ORDERED** that George Morrison, Reono Bertagnolli, Gwendolyn Vick, Ann York, Allissa Haas, Haley Bassuener, Ashley Haseleu, and Allison Hohenstern are **DISMISSED** from this action because Weightman fails to state a claim against them.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Weightman's amended complaint and this

6

order are being electronically sent today to the Wisconsin Department of Justice for service on Dr. O'Brien, Cheryl Jeanpierre, Charles Dombeck, Diana Simmons, Laura Sukowaty, and Robert Weinman.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Dr. O'Brien, Cheryl Jeanpierre, Charles Dombeck, Diana Simmons, Laura Sukowaty, and Robert Weinman shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin on February 17, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
